IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHARAY L. FOWLER,                )
                                 )
         Petitioner,             )
                                 )
     v.                          )    1:09CV248
                                 )
JOSEPH HALL, Supt.,              )
                                 )
         Respondent.             )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 6, 2002, in the Superior Court of Surry County, Petitioner pled guilty to one count of possession of a firearm by a felon, two counts of armed robbery, and four counts of first-degree kidnapping in cases 01CRS52925, 01CRS53066, and 02CRS3401-04. He was then sentenced to consecutive terms of 69 to 92 months of imprisonment and 90 to 117 months of imprisonment. Petitioner filed a direct appeal, but his judgments were affirmed. State v. Fowler, No. COA02-1453, 2003 WL 21153436 (N.C. Ct. App. May 20, 2003)(unpublished).

Nothing more was filed by Petitioner until July 16, 2008, when Petitioner filed a motion for appropriate relief in the trial court. After that motion was denied, Petitioner filed a second motion for appropriate relief, which was also denied. Petitioner then proceeded with a petition for certiorari to the North Carolina Court of Appeals. Certiorari was denied on November 25, 2008. Petitioner signed his habeas petition to this Court as being mailed

on March 28, 2009. It was received by the Court on April 8, 2009. That petition raises three claims, all of which are related to events occurring at the time of Petitioner's conviction.

Respondent requests dismissal of the petition on the ground that the petition was filed[1] outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA"). 28 U.S.C. § 2244(d)(1). The AEDPA amendments apply to petitions filed under § 2254 after April 24, 1996. Lindh v. Murphy, 521 U.S. 320 (1997).

Interpretations of the limitation periods found in 28 U.S.C. §§ 2244(d)(1) and 2255 have equal applicability to one another. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). The limitation period ordinarily starts running from the date when the judgment of conviction became final at the end of direct review. Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000). Finality has been construed to mean when a petitioner may no longer seek further review because of (1) the denial of a petition for certiorari to the United States Supreme Court; or, (2) the expiration of the time to file such a petition. Clay v. United States, 537 U.S. 522 (2003); Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002).

Here, Petitioner did pursue a direct appeal. The North Carolina Court of Appeals denied that appeal in a decision issued on May 20, 2003. Under North Carolina law, the mandate issued

---

[1]A petition is filed by a prisoner when the petition is delivered to prison authorities for mailing. Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999).

twenty days later and Petitioner then had fifteen more days to file for review in the North Carolina Supreme Court. N.C.R. App. P. 32(b); N.C.R. App. P. 14(a) and 15(b). Respondent calculates that this gave Petitioner until June 24, 2003 to file for further review. He did not so file, making his conviction final on that day. Petitioner's time to file in this Court then began to run. It expired a year later in June of 2004, without Petitioner having filed a habeas petition.

It is true that the one-year limitation period is tolled while state post-conviction proceedings are pending. Harris, supra. The suspension is for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Unfortunately, Petitioner did not file anything in the state courts until July 16, 2008, well after his time to file in this Court had already expired. Attempts at state court relief which are filed after the AEPDA time limit has already passed do not revive or restart the one-year limitation period. Minter v. Beck, 230 F.3d 663 (4th Cir. 2000).

Petitioner does not contest the calculations set out above. Instead, he states in his petition that his untimeliness should be excused because he was deprived of effective assistance of counsel, he is a layman of the law, he has new affidavits to support his claims, and, following sentencing, he was on suicide watch and

taking "mental health medications." (Docket No. 1 at 14.) These arguments appear to be an attempt at receiving equitable tolling.

The Fourth Circuit, as well as a number of courts, have held that the one-year limitation period is subject to equitable tolling. Harris, supra; Sandvik, 177 F.3d at 1271 (collecting cases). Equitable tolling may apply when a petitioner has been unable to assert claims because of wrongful conduct of the state or its officers. A second exception is when there are extraordinary circumstances, such as when events are beyond the prisoner's control and the prisoner has been pursuing his rights diligently. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Harris, supra; Akins v. United States, 204 F.3d 1086 (11th Cir. 2000). Circumstances are beyond a prisoner's control if he has been prevented in some extraordinary way from exercising his rights. See Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000). This might occur where a prisoner is actively misled or otherwise prevented in some extraordinary way from exercising his rights. Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). On the other hand, unfamiliarity with the legal process, lack of representation, or illiteracy does not constitute grounds for equitable tolling. Harris, supra; Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999). Likewise, mistake of counsel does not serve as a ground for equitable tolling. Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999); Sandvik, 177 F.3d 1269. Nor are prison conditions, such as lockdowns or misplacement of legal papers, normally grounds for equitable tolling. Akins, 204 F.3d 1086. Waiting years to raise

claims in state court and months to raise them in federal court shows lack of due diligence. Pace, supra. Finally, in order to show diligence, the prisoner must show diligence not merely at the federal level, but throughout the entire post-conviction process in order to have equitable tolling available to him. Coleman, 184 F.3d at 402.

Most of Petitioner's arguments easily fail based on the case law just set out. Mistakes by his prior attorney and the fact that he is a layman do not entitle him to equitable tolling. Likewise, his "new" evidence does not affect the case. He gives no reason, other than his mental health argument, why that evidence could not have been gathered earlier. This means that Petitioner's only remaining argument is that he was too mentally ill to act in pursuit of his rights.

Petitioner's brief in response to Respondent's motion to dismiss focuses on his mental health argument and includes affidavits from both he and his mother concerning his mental health history. Petitioner's affidavit states that, around the time of his arrest, he was "under pressure, depressed, nervous, scared as a first offender[2]" and upset over his grandmother's "demise." He then became "hopeless," "lost [his] mind," and attempted suicide "a few times" prior to being transferred from a county jail to a state prison. Once he was transferred, he was put on "suicide watch and

---

[2]Petitioner does not explain how, as a previously convicted felon who could not possess the firearm he was charged with possessing, he was a "first offender." The current convictions would appear to be at least his second interaction with the criminal justice system on felony charges.

-5-

mental health [sic] in Raleigh." Petitioner was diagnosed with "many mental illnesses including depression, paranioa [sic], anxiety, homophobia, and suicidal [sic]." He was then placed on a number of different medications. He states that he does not remember a lot of the events from the fall of 2001 and that, although he received visits from his family, he cannot recall specific details because he "couldn't think clear [sic]." (Docket No. 6, Petitioner Aff.)

Petitioner's mother's affidavit provides a few more details. She states that she attempted to visit him in the county jail around December 14, 2001, but was told that he had been taken to Raleigh to be placed on a "suicide, mental health watch." She was later able to see him in early 2002 and was concerned because he had put on weight due to medications and did not appear to respond to her or realize what was happening. She states that he just rocked back and forth. In March of 2003, after he did not respond to her letters, she visited and found that he had not bathed and "acted like he was derranged [sic]." In response to her asking whether he had spoken to his attorney, he just shook his head to indicate that he had not. He would not look at his mother. Around "Jan. 20th" of an unidentified year, she spoke with his psychologist to express her concerns and was told that he had been "locked up" on "several occasions" because of suicidal thoughts and threats. On a June 16, 2005 visit, she noticed he had been pulling out his beard and head hair after being diagnosed with trichotillomania. He was also in a zombie-like state. When

Petitioner wrote her letters, he begged God to take his life. However, "[i]n about 2007" he "began to come around a little bit more." (Id. Gwendolyn Riley Aff.)

The bar to successfully establish facts allowing equitable tolling is very high and the burden is on Petitioner to present facts that allow him to clear that bar. See Rouse, 339 F.3d at 246 (discussing fact that a petitioner must present the extraordinary circumstances necessary to be entitled to equitable tolling). Any other rule would allow courts to impermissibly undermine AEDPA's goal of encouraging prompt filings through the use of the one-year limitation period. Id. at 253. Courts have held that mental incompetency can be a reason for granting equitable tolling. However, a petitioner's mental illness must not have merely lessened his ability to file or made filing difficult, but must have actually prevented him from understanding his legal rights and acting on them. Rhodes v. Senkowski, 82 F. Supp. 2d 160, 168-69 (S.D.N.Y. 2000)(collecting cases). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity," such as where a petitioner is institutionalized or adjudged mentally incompetent. United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004). Simply having a mental illness and taking medications are not sufficient. Id. Nor will conclusory allegations be enough to meet a petitioner's burden. Rhodes, 82 F. Supp. 2d at 172.

-7-

Petitioner's affidavit is not nearly sufficient to meet his burden.  It focuses almost entirely on events at or near the time of his arrest and convictions.  It does not deal with the relevant time period between the finality of his conviction in June of 2003 and the filing of his motion for appropriate relief in state court in July of 2008.  Therefore, it is unhelpful to his case.

Much of Petitioner's mother's affidavit is the same. Approximately the first half of the affidavit gives an account of Petitioner's mental state prior to the conclusion of his appeal in 2003.  Only in the second half of the affidavit does she address the relevant time period.  Even then, she mentions only two dates between 2003 and 2008.  She states that Petitioner was pulling out his beard and head hair while in a zombie-like state in June of 2005 and that he began to improve sometime around 2007.  He also apparently wrote her letters talking about wanting to die, although it is not clear when those letters were sent.

Overall, Petitioner's evidence, even if accepted at face value, demonstrates that he suffered from mental problems to some extent from the time of his arrest in 2003 until "around 2007."  He was placed on suicide watches and lockdowns at certain times and took medications to alleviate his problems.  What it does not establish is more significant. It does not show that Petitioner was incapacitated for the entire five-year period.  He certainly may have had significant problems in 2005, but they do not appear to have been debilitating to the point that it was impossible for him to have made filings.  There is no indication that he was

completely incapacitated or in a lockdown situation in a psychiatric ward even at that time, much less for the entire period in question.

More importantly, Petitioner's mother states that he improved in 2007. It is not clear whether the improvement occurred at the beginning or the end of that year, but even if it was at the very end, Petitioner still did not begin to pursue his state court remedies until seven and one-half months later on July 16, 2008. Then, after his state remedies were exhausted, he allowed another four months and three days to pass before filing in this Court. This means that if he had the capacity to file for even two weeks between June 24, 2003 and December 31, 2007, he is time-barred even if all of the rest of the time is equitably tolled. Petitioner's evidence is nowhere near the level needed to show that there was not even a two-week period between June 24, 2003 and July 16, 2008 during which he had the mental ability to pursue his rights. Petitioner is not entitled to equitable tolling and his petition should be dismissed.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion to dismiss (docket no. 3) be granted, that the petition (docket no. 1) be dismissed, and that Judgment be entered dismissing this action.

                                                  /s/ Donald P. Dietrich
                                                  **Donald P. Dietrich**
                                     **United States Magistrate Judge**

September 24, 2009